1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

8
9

10   ASHLEY TIFF-MCCAULEY,

11             Plaintiff,                    CASE NO. 2:16-cv-01380 JRC

12       v.                                  ORDER ON PLAINTIFF'S
                                             COMPLAINT
13   NANCY A. BERRYHILL, Acting
14   Commissioner of the Social Security
     Administration,[1]
15
                    Defendant.
16

17       This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

18   Local Magistrate Judge Rule MJR 13. *See also* Notice of Initial Assignment to a U.S.

19   Magistrate Judge and Consent Form, Dkt. 6; Consent to Proceed Before a United States

20   Magistrate Judge, Dkt. 7. This matter has been fully briefed. S*ee* Dkt. 11, 12, 13.

21

22
         [1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to
23   Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting
     Commissioner Carolyn W. Colvin as the defendant in this suit, pursuant to the last sentence of
24   section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1    Plaintiff was physically abused by her father; sexually abused by her step father

2  between the ages of nine and twelve; and physically abused by her first husband. AR. 545

3  (father), 865 (stepfather); *see also* AR. 842 (both). As a result, she developed anxiety and

4  was diagnosed with posttraumatic stress disorder ("PTSD") in 2008. *Id*. However,

5  although plaintiff attempted counseling in 2013, which was interrupted by the death of

6  her father, she did not return, reporting that it is "a lot harder for me to go talk about it

7  and relive everything than just not." AR. 940; *see also* AR. 883, 1074.

8    Regarding her physical impairments, plaintiff first injured her back in June 2010,

9  while moving a resident while working as a CNA. AR. 545, 671. Plaintiff reported re-

10  injuring her back in the winter of 2010 when she fell on the ice. AR. 48.

11

12    Plaintiff's primary care provider filled out a check-box form indicating that

13  plaintiff could not work, and hand wrote the explanation that plaintiff could not "lift

14  heavy objects; sit or stand for long periods of time; bend over; reach above; [] 

15  concentrate;" or do repetitive motions because of her pain. AR. 581. Therefore, the ALJ's

16  failure to credit fully the opinion from plaintiff's primary care provider on the basis that

17  she only "checked multiple boxes without explaining her rationale," is not legitimate as

18  the Ninth Circuit has held that a doctor's opinion cannot be rejected solely because it is

19  provided on a check-the-box form.   Nor is it based on substantial evidence in the record

20  as a whole. *See* AR. 901 (citation and footnote omitted). Furthermore, although the ALJ

21  finds that plaintiff's primary care provider did not indicate whether she agreed with the

22  particular assessment from the doctor of physical therapy, plaintiff's primary care

23

24

ORDER ON PLAINTIFF'S COMPLAINT - 2

provider actually attached these particular records to her opinion, strongly suggesting

agreement with them, especially as they supported her opinion.

The ALJ rejects, at least in part, every medical opinion in plaintiff's medical

record. However, the ALJ has failed to explain why his own evaluation of the objective

medical evidence is more correct than those of plaintiff's treating and examining doctors,

and even the state agency reviewing doctors.

Therefore, after considering and reviewing the record, the Court concludes that

this matter should be reversed and remanded for further administrative proceedings

consistent with this Order.

<u>BACKGROUND</u>

Plaintiff, ASHLEY TIFF-MCCAULEY, was born in 1985 and was 26 years old

on the alleged date of disability onset of July 1, 2011. *See* AR. 223-30, 231-36. Plaintiff

received her GED. AR. 252, 902.  Plaintiff has work experience as a cashier, hostess,

baker/prep cook, housekeeper and nursing assistant. AR. 281-92.  Plaintiff left her last

employment after an injury on the job. AR. 49-50.

According to the ALJ, plaintiff has at least the severe impairments of "back

disorder; [and] anxiety disorder (20 CFR 404.1520(c) and 416.920(c))." AR. 892.

At the time of the last hearing, plaintiff was living with her husband and son. AR.

934, 957, 964.

<u>PROCEDURAL HISTORY</u>

Plaintiff's applications for disability insurance benefits ("DIB") pursuant to 42

U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42

U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration. *See* AR. 81-92, 93-103, 106-120, 121-35. Plaintiff's first requested hearing resulted in an unfavorable decision and a remand for further proceedings. *See* AR. 15-34, 1006-11, 1012-17. Plaintiff's second requested hearing was held before Administrative Law Judge Wayne N. Araki ("the ALJ") on January 14, 2016. *See* AR. 910-76. On May 26, 2016, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act. *See* AR. 886-909.

In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) Did the ALJ fail to evaluate properly the medical opinion of treating physician Dr. Deepika Goshike, the opinion of examining psychologist Dr. Johansen, and the opinions of reviewing psychologist Dr. Richard Borton and reviewing physician Dr. Norman Staley; and (2) Did the ALJ improperly find that plaintiff's symptom testimony was not supported by the medical evidence without providing specific, clear, and convincing reasons. *See* Dkt. 11, p. 2.

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

<u>DISCUSSION</u>

**(1)    Did the ALJ fail to evaluate properly the medical opinion of treating physician Dr. Deepika Goshike, M.D., the opinion of examining psychologist Dr. Johansen, and the opinions of reviewing psychologist Dr. Richard Borton and reviewing physician Dr. Norman Staley?**

Plaintiff contends that the ALJ erred when evaluating multiple medical opinions. Defendant contends there is no harmful error.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). But when a treating or examining physician's opinion is contradicted, that opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)); *see also* 20 C.F.R. §§ 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions").

a.  Dr. Deepika Goshike, M.D., primary care provider

Plaintiff established treatment with Dr. Deepika Goshike in July, 2011. AR. 545. Dr. Goshike noted plaintiff's report that she had a lot of pain in her lower back which was radiating down to her lower extremities bilaterally causing shooting pains, and that

sometimes she was losing sensation in her lower extremities. *Id*. The next month, Dr. Goshike observed upon examination that plaintiff "does have some muscle spasm noted in the right paraspinal area," although the rest of the examination looked good. AR. 537. Dr. Goshike opined that plaintiff's back pain was "likely secondary to muscle spasm." AR. 53. She noted that although she ordered an MRI, "insurance did not approve." *Id*. Dr. Goshike, at that time, opined that plaintiff was limited to zero hours of work per week on a check-box form. AR. 581. However, Dr. Goshike also specifically described plaintiff's specific limitations, handwriting that plaintiff could not "lift heavy objects; sit or stand for long periods of time; bend over; reach above; [] concentrate;" or do repetitive motions because of her pain. *Id*. Dr. Goshike also specifically opined that plaintiff was limited to sedentary work, and was able to lift only 10 pounds maximum, and frequently lift or carry such articles as files and small tools. AR. 583.

Subsequently, Dr. Goshike referred plaintiff to a pain clinic for evaluation and management of her lower back pain. AR. 534. Dr. Brian Wernick, M.D., reviewed plaintiff's MRI from August 2011 and noted that it demonstrated a minimal disc bulge at L3-L4 and a slight desiccation of the same disk. AR. 810. Dr. Wernick observed upon examination that plaintiff was "tender to palpation in the bilateral lumbar paraspinal region, [at] approximate the L5 level, [and was] also tender to palpation over the right sacroiliac joint, [but] nontender to palpation over the left [and that] straight leg raise is mildly positive in both lower extremities." AR. 811. He opined that plaintiff suffered from low back pain; lumbar spondylosis without myelopathy; and obesity, and that she should work aggressively regarding diet and weight loss. *Id*.

1    Dr. Goshike provided another opinion specifically regarding plaintiff's functional

2  limitations on February 22, 2012. *See* AR. 58. She again opined that plaintiff was unable

3  to participate in work, again specifying that plaintiff could not lift heavy objects; sit or

4  stand for long periods of time; do repetitive motions; bend over; or reach above due to

5  pain. *See* AR. 585-87. Dr. Goshike again opined that plaintiff was limited to sedentary

6  work, opining that plaintiff was limited to lifting 10 pounds. AR. 587.

7    The ALJ gave only "little weight" to the opinions from plaintiff's primary care

8  provider, Dr. Goshike. AR. 901. The ALJ appears to rely mostly on the opinion from the

9  non-examining state agency reviewer Dr. Norman Staley, M.D., when formulating the

10  residual functional capacity determination ("RFC"). AR. 899. However, the ALJ gives

11  only partial weight to this opinion, too, which appears to be the most weight given to any

12  specific opinion regarding functional limitations. Because Dr. Staley, too, opined that

13  plaintiff was limited to lifting 10 pounds, plaintiff contends that this opinion is

14  uncontradicted, meaning that in order to reject this opinion the ALJ must provide clear

15  and convincing rationale. *See* Dkt. 11, p. 9 (citing *Lester*, 81F.3d at 830). Defendant,

16  however, argues that "the ALJ cited the contrary conclusions of treating physician Brian

17  Wernick, M.D., which meant that the ALJ need only have cited specific and legitimate,

18  rather than clear and convincing, reasons, to validly discount Dr. Goshike opinion." Dkt.

19  12, p. 3 (citing AR. 901; *Widmark v. Barnhart*, 454 F.3d 1063, 1066-67 (9th Cir. 2006)).

20  However, although the ALJ noted that Dr. Wernick commented that plaintiff needed to

21  aggressively pursue a diet exercise program, Dr. Wernick did not contradict Dr.

Goshike's and Dr. Staley's opinion that plaintiff was limited to lifting only 10 pounds, and did not specifically contradict the other opinions noted either.

First, the ALJ relied on a finding that Dr. Goshike utilized a check-box form "without explaining her rationale." AR. 901 (citing AR. 396-98). However, it is clear from looking at the form filled out by Dr. Goshike that she did indeed explain her rationale. *See, e.g.,* AR. 396. As noted previously, Dr. Goshike opined that plaintiff was limited to working zero hours a day, specifically describing plaintiff's limitations on lifting heavy objects; sitting or standing for long periods of time; performing repetitive motions; bending over; or reaching, because of pain. *See id.* Therefore, this rationale by the ALJ is neither legitimate nor based on substantial evidence, but also is a far cry from clear and convincing. Furthermore, the Court notes that discrediting a doctor's opinion simply because she used a check-box form is not valid unless that opinion is inconsistent with the underlying clinical records. *See Garrison v. Colvin*, 759 F.3d 995, 1014 n.17 ("the ALJ was [not] entitled to reject [medical] opinions on the ground that they were reflected in mere check-box forms" where the "check-box forms did not stand alone" but instead "reflected and were entirely consistent with the hundreds of pages of treatment notes"); *see also Neff v. Colvin*, 639 F. App'x 459 (9th Cir. 2016) (unpublished); *Esparza v. Colvin*, 631 F. App'x 460, 462 (9th Cir. 2015) (unpublished). As noted by the ALJ, Dr. Goshike's opinion was submitted with attached physical therapy records from Dr. Evan Shute, DPT. *See* AR. 901. Dr. Shute diagnosed plaintiff with impaired "joint mobility, motor function, muscle performance and [range of movement] ROM associated with connective tissue dysfunction; impaired joint mobility, motor function, muscle

performance, and ROM associated with localized inflammation; [and] impaired joint

mobility, motor function, muscle performance, and ROM and reflex integrity associated

with spinal disorders." AR. 399. Dr. Shute noted that plaintiff's physical therapy

"evaluation finds patient demonstrating increased lumbar lordosis, lumbar instability at

L3/4, L4/5, and L5/S1, positive testing for bulging discs at L4/5 and L5/S1, anterior

rotation of the R innominate and muscle guarding in the lumbar spine." *Id*. The ALJ

found that Dr. Goshike "neither confirms [n]or disagrees with this assessment." AR. 901.

However, as argued by plaintiff, "attaching these records which are supportive of the

doctor's limitations is sufficient evidence to infer that the ALJ confirmed the

assessment." Dkt. 11, p. 10. The Court finds this argument persuasive, and further notes

plaintiff's argument that if the ALJ found this evidence to be ambiguous, the ALJ "had a

duty to resolve the ambiguity by recontacting Dr. Goshike." *Id*. (citing *Mayes v.

Massanari*, 276 F.453, 459-60 (9th Cir. 2001) (the ALJ's duty to develop the record is

triggered if the evidence is ambiguous)); *see also Tonapetyan v. Halter*, 242 F.3d 1144,

1150 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (the

ALJ "has an independent 'duty to fully and fairly develop the record and to assure that

the claimant's interests are considered'").

      The ALJ also found that Dr. Goshike "checked 'yes' to both 'severely limited' and

'sedentary work.'" AR. 901 (citing AR. 397). However, it is clear from looking at Dr.

Goshike's opinion that she first checked severely limited, then scratched it out and

checked sedentary work. Again, if that was unclear to the ALJ, and the ALJ found it to be

1  ambiguous, the ALJ had a duty to develop the record further on this and recontact Dr.

2  Goshike.

3        Although the ALJ cites some objective findings from the record, the ALJ does not

4  explain why these findings demonstrating that the opinions from plaintiff's primary care

5  provider should not be credited fully. Furthermore, the findings noted by the ALJ appear

6  to be contradicted by the findings that Dr. Goshike attached to her opinion, such as the

7  "joint mobility, motor function, muscle performance and [range of movement] ROM

8  associated with connective tissue dysfunction; impaired joint mobility, motor function,

9  muscle performance, and ROM associated with localized inflammation; [and] impaired

10  joint mobility, motor function, muscle performance, and ROM and reflex integrity

11  associated with spinal disorders." AR. 399. The ALJ has not explained adequately why

12  his own interpretations are more correct than those of plaintiff's primary care doctor, Dr.

13  Goshike, or the examining doctor of physical therapy, Dr. Shute. *See Reddick v. Chater*,

14  157 F.3d 715, 725 (9th Cir. 1998) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th

15  Cir. 1988)) (the ALJ must explain why his own interpretations, rather than those of the

16  doctors, are correct).

17        Although the ALJ notes that Dr. Wernick commented that plaintiff needed to

18  pursue a diet and exercise program to lose weight, as discussed already, this opinion does

19  not invalidate the opinions from plaintiff's primary care provider. At most, it would

20  lessen the standard by which the ALJ's rejection is judged, mandating only specific and

21  legitimate rationale supported by substantial evidence in the record as a whole, as

22  opposed to clear and convincing rationale. However, for the reasons discussed herein, the

Court concludes that the ALJ did not even offer specific and legitimate rationale supported by substantial evidence in the record as a whole for the failure to credit fully the opinions from Dr. Goshike.

The Court also concludes that the error is not harmless.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). Recently the Ninth Circuit reaffirmed the explanation in *Stout* that "ALJ errors in social security are harmless if they are 'inconsequential to the ultimate nondisability determination' and that 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (citing *Stout,* 454 F.3d at 1055-56). In *Marsh*, even though "the district court gave persuasive reasons to determine harmlessness," the Ninth Circuit reversed and remanded for further administrative proceedings, noting that "the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court." *Id.* (citing 20 C.F.R. § 404.1527(d)(1)-(3)).

Here, Dr. Goshike opined specifically that plaintiff could not work at all, explaining that she could not "lift heavy objects; sit or stand for long periods of time; bend over; reach above; [] concentrate;" or do repetitive motions because of her pain, AR. 581, and that plaintiff only could lift 10 pounds maximum. AR. 583. The Court

1   cannot conclude with confidence "that no reasonable ALJ, when fully crediting the

2   [opinion from Dr. Goshike], could have reached a different disability determination."

3   *Marsh*, 792 F.3d at 1173 (citing *Stout*, 454 F.3d at 1055-56). Therefore, the error is not

4   harmless. *See id.*

5           It is particularly problematic to the Court that the Administration has had two

6   opportunities to evaluate plaintiff's applications and both times has failed to do so

7   properly. However, it is not clear that crediting-as-true Dr. Goshike's opinions would

8   require a finding of disability. For example, the vocational expert was not questioned as

9   to the effect of limiting plaintiff to lifting 10 pounds. *See* AR. 968-76. In addition, Dr.

10  Goshike's opinions may need further clarification, as, for example, she opined that

11  plaintiff could not sit or stand for long periods of time, but this is somewhat ambiguous,

12  as it is not clear if "long periods of time" means less than two hours at one time, less than

13  two hours total in an eight hour workday, or something else. *See* AR. 581. Therefore,

14  further administrative proceedings may be useful and this matter must be remanded for

15  further administrative proceedings. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir.

16  2000) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)) (matter should not

17  be remanded with a direction to award benefits unless "it is clear from the record that the

18  ALJ would be required to find the claimant disabled were such evidence credited" and if

19  further administrative proceedings would be useful).

20

21

22

23

24

b.   Examining psychologist Dr. Steven Johansen, Ph.D.

The Court already has concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further consideration, *see supra*, section 1.a. Based on a review of the record as a whole, the Court concludes that the ALJ should evaluate anew all of the medical evidence in the record.

However, the Court notes the following for the ALJ as guidance on remand. The ALJ did not provide greater weight to the opinion from Dr. Steven Johansen, Ph.D. "because it appears that he relied heavily on [plaintiff's] subjective report of symptoms . . . . [explaining] that Dr. Johansen relied heavily on what the claimant told him is seen in repeated quotes on the first page of his report." AR. 900 (citing AR. 842). However, the ALJ is citing to the clinical interview portion of the examination. This part of the examination, by definition, always is based on plaintiff's subjective reports. Therefore, this rationale never can be legitimate rationale for failing to credit fully a medical opinion.

The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original).

The Mental Status Examination generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz and Baker, *supra*, The Psychiatric Mental Status Examination 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (*id.* at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted).

In addition, the Ninth Circuit noted the following in an unpublished decision:

> Moreover, mental health professionals frequently rely on the combination of their observations and the patient's report of symptoms (as do all doctors); indeed the examining psychologist's report credited by the ALJ also relies on those methods. To allow an ALJ to discredit a mental health professional's opinion solely because it is based to a significant degree on a patient's 'subjective allegations' is to allow an end-run around our rules for evaluating medical opinions for the entire category of psychological disorders.

*Ferrrando v. Comm'r of SSA*, 449 Fed. Appx. 610, 612 n2 (9th Cir. 2011) (unpublished memorandum opinion).

When an ALJ seeks to discredit a medical opinion, he must explain why his own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)); *see also*

*Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) ("When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professional trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation") (quoting *Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987) (quoting *Lebus v. Harris*, 526 F.Supp. 56, 60 (N.D. Cal. 1981))); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong") (internal citations omitted)). This error, too, should be corrected following remand of this matter.

### (2)    Did the ALJ improperly find that plaintiff's symptom testimony was not supported by the medical evidence without providing specific, clear, and convincing reasons?

The Court already has concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further consideration, *see supra*, section 1. In addition, the evaluation of a claimant's statements regarding limitations relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 SSR LEXIS 4. Therefore, plaintiff's testimony and statements should be assessed anew following remand of this matter.

1

CONCLUSION

2

     Based on the stated reasons and the relevant record, the Court **ORDERS** that this

3

matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. §

4

405(g) to the Acting Commissioner for further consideration consistent with this order.

5

     **JUDGMENT** should be for plaintiff and the case should be closed.

6

Dated this 22nd day of March, 2017.

7

8

9

J. Richard Creatura
United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24